**Opinion filed April 18, 2013**



## In The

# Eleventh Court of Appeals

_____

## No. 11-11-00251-CR

_____

## MARKUS RAY SNEED, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17745B**

### O P I N I O N

The jury convicted Markus Ray Sneed of possession of four grams or more but less than 200 grams of cocaine with the intent to deliver. The jury assessed Appellant's punishment at confinement for a term of twenty-five years. The trial court sentenced Appellant accordingly and ordered that the sentence run consecutively to Appellant's life sentence in cause no. 17763B in the same district court of Taylor County.[1] We affirm.

---

[1]Today, in a separate opinion, we affirm Appellant's conviction in cause no. 17763B.

*Background Facts*

The indictment contained two counts. In the first count, Appellant was charged with the offense of possession of four grams or more but less than 200 grams of cocaine with the intent to deliver. In the second count, Appellant was charged with the offense of simple possession of the same cocaine. Appellant pleaded "not guilty" to the first count and "guilty" to the second count. Based on Appellant's guilty plea to the second count, the trial court instructed the jury in the jury charge to find Appellant guilty of the second count if it found Appellant not guilty of the first count. The jury found Appellant guilty of the first count. The trial court submitted the issue of punishment to the jury, and the jury assessed Appellant's punishment at confinement for twenty-five years.

*Issues on Appeal*

Appellant presents four issues for review. In his first issue, Appellant contends that the trial court erred by submitting the issue of punishment to the jury because he did not make a written election to have the jury assess punishment. In his second issue, Appellant contends that, because he did not make a written election for the jury to assess punishment, his trial counsel rendered ineffective assistance of counsel by failing to object to the trial court's submission of the issue of punishment to the jury. In his third issue, Appellant challenges the sufficiency of the evidence to support his conviction. In his fourth issue, Appellant contends that his sentence is grossly disproportionate to the offense committed and that, therefore, the sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. *See* U.S. CONST. amend. VIII.

*Submission of Punishment Issue to Jury*

Appellant's first two issues are based on the premise that he did not elect in writing to have punishment assessed by the jury. Appellant states in his brief that "the record contains neither a motion for community supervision nor a written election for the jury to assess punishment." The clerk's original record on appeal did not contain an election to have the jury assess punishment.

The State filed a motion to supplement the clerk's record, which we granted. The district clerk sent a supplemental clerk's record to this court, and it has been filed in this cause. The supplemental clerk's record contains a document entitled "Defendant's Election as to Punishment." In the election, Appellant's counsel stated that Appellant elected for the jury to

assess punishment in the event of a conviction. Appellant's counsel signed the election. The supplemental clerk's record and the reporter's record show that Appellant's counsel filed the election before voir dire examination of the jury panel commenced. Therefore, the election complied with the requirements of Article 37.07, section 2(b) of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 37.07, § (2)(b) (West Supp. 2012). Appellant's first two issues are based on an incorrect premise. The filing of the supplemental clerk's record has rendered Appellant's first two issues moot. *Wilson v. State*, 296 S.W.3d 140, 143 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Appellants' first and second issues are overruled as moot.

*Sufficiency of the Evidence*

In his third issue, Appellant contends that, while the evidence showed that he possessed 6.37 grams of cocaine, the evidence was insufficient to establish that he intended to deliver it. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under this standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

"Deliver" means to transfer, actually or constructively, a controlled substance to another. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West 2010). Intent to deliver a controlled substance can be proved by circumstantial evidence, including evidence that an accused possessed the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.); *Ingram v. State*, 124 S.W.3d 672, 675–76 (Tex. App.—Eastland 2003, no pet.). Factors courts consider in determining whether an accused had the intent to deliver include: (1) the nature of the location at which the accused was arrested; (2) the quantity of the controlled substance in the accused's possession; (3) the manner of packaging; (4) the presence or lack

thereof of drug paraphernalia (for either use or sale); (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Moreno*, 195 S.W.3d at 325; *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Moreno*, 195 S.W.3d at 326; *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Expert testimony by an experienced law enforcement officer may be used to establish an accused's intent to deliver. *Moreno*, 195 S.W.3d at 326; *Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

The record shows that, on March 1, 2010, Abilene police officers executed a warrant at an apartment at 3033 West Lake Road in Abilene, Texas. Agent Sue Belver of the Special Operations Division obtained the warrant, and she was the case agent in charge of the search operation. Appellant was a named suspect in the warrant. Members of the SWAT team and members of the Narcotics Division were present at the scene. SWAT team members entered the apartment. Officer Kevin Ohnheiser went upstairs. He located Appellant in an upstairs room and then handcuffed him. The officers secured the apartment and brought Appellant downstairs.

Agent Gary Castillo of the Narcotics Division searched Appellant. Agent Castillo said that Appellant was wearing two pairs of shorts. In the back right pocket of the outer pair of shorts that Appellant was wearing, Agent Castillo found a plastic sandwich bag containing a substance that appeared to be a cookie of crack cocaine. Later testing of the substance showed that it weighed 6.37 grams and contained cocaine. Agent Castillo found $120 in the same pocket. He found an additional $150 in the front right pocket of the inside pair of shorts that Appellant was wearing. Agent Belver testified that the only way crack cocaine can be used is to smoke it in a glass or metal pipe. Agent Castillo said that he did not find any pipes when he searched Appellant.

Agent Belver testified that, based on her training and experience, 6.37 grams of cocaine is "quite a bit, more than for personal use." She said that, usually, crack addicts buy $20 rocks of crack cocaine one rock at a time for use. After smoking a rock, an addict will buy another $20 rock if he or she wants more cocaine. Agent Belver also said that, usually, "[addicts] don't have the ability to control themselves to buy in bulk." She said that a crack addict could possibly smoke one-half a gram to a gram of crack cocaine in one night. Agent Belver explained that "[i]t

4

usually takes about 10 to 12 good-sized $20 rocks to make a gram." She said that, if the crack cocaine that was found in Appellant's possession was cut into $20 rocks, the cocaine would have a street value of about $1,000 to $1,200. Agent Belver found it significant that Appellant did not have a crack pipe when he was searched. Agent Belver testified that, because Appellant was not in possession of a pipe to smoke the cocaine, she did not believe that Appellant possessed it for personal use. Agent Belver said that the quantity of cocaine possessed and the absence of a crack pipe indicated to her that Appellant intended to deliver or sell the cocaine.

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant possessed the cocaine with the intent to deliver it. The evidence showed that Appellant possessed 6.37 grams of crack cocaine. Agent Belver testified that the quantity of cocaine seized from Appellant was "quite a bit" of cocaine and exceeded the amount of cocaine usually possessed by a drug user for personal use. Agent Belver's testimony was sufficient to establish that Appellant intended to deliver the cocaine. *Mack*, 859 S.W.2d at 529. Therefore, the evidence is sufficient to support Appellant's conviction. Appellant's third issue is overruled.

*Appellant's Sentence*

In his fourth issue, Appellant contends that his sentence is grossly disproportionate to the offense and that, therefore, the sentence is unjust, cruel, and unusual based on his crime, his age, and his need for rehabilitation. As stated above, the trial court ordered that Appellant's twenty-five year sentence run consecutively to the life sentence that Appellant received in cause no. 17763B. Appellant asserts in his brief that his sentence in this cause "is too harsh based upon all the circumstances, and thus, the sentence constitutes cruel and unusual punishment – especially in light of the fact that the trial court ordered that the sentence run consecutively with a previously-imposed life sentence."

As a general rule, punishment is not cruel and unusual if it falls within the range of punishment established by the legislature. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.); *Rodriguez v. State*, 71 S.W.3d 778, 779 (Tex. App.—Texarkana 2002, no pet.). In this cause, Appellant was convicted of a first-degree felony offense of possession of four grams or more but less than 200 grams of cocaine with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010). The statutory range of punishment for a first-degree felony

5

offense is five to ninety-nine years or life and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2011). Appellant's twenty-five year sentence is within the statutory range of punishment.

A narrow exception to the general rule is recognized when the sentence is grossly disproportionate to the offense. *Harmelin v. Michigan*, 501 U.S. 957, 1004–05 (1991) (Kennedy J., concurring); *Solem v. Helm*, 463 U.S. 277, 290–92 (1983); *Dale*, 170 S.W.3d at 799. In such cases, the sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Solem*, 463 U.S. at 290; *Diaz-Galvan v. State*, 942 S.W.2d 185, 186 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). Thus, a prohibition against grossly disproportionate punishment survives under the Federal Constitution apart from any consideration of whether the punishment assessed is within the statute's range. *Delacruz v. State*, 167 S.W.3d 904, 906 (Tex. App.—Texarkana 2005, no pet.). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

In considering a claim that a sentence is disproportionate, we first make a threshold comparison of the gravity of an appellant's offense against the severity of his or her sentence. *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Dale*, 170 S.W.3d at 799–800. We consider the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Solem*, 463 U.S. at 292; *Dale*, 170 S.W.3d at 800. Only if we infer that the sentence is grossly disproportionate to the offense will we then compare the sentence received to sentences imposed for similar crimes in Texas and sentences imposed for the same crime in other jurisdictions. *McGruder*, 954 F.2d at 316; *Dale*, 170 S.W.3d at 800.

Possession of over six grams of cocaine with the intent to deliver is a serious offense. During the punishment hearing, the State presented evidence that, on July 13, 2009, Appellant, Alicia Becerra, and two other individuals committed a home invasion burglary against Leon Ellis Black Jr. Black was an elderly gentleman. Becerra testified that Appellant used a gun during the commission of the offense, that Appellant told Black to get on the ground, and that Black got on the ground at Appellant's command. Black testified that the group ransacked his house and took money, jewelry, a television, and a gun during the robbery. The State also presented evidence that, on July 25, 2008, Appellant possessed a handgun and 4.42 grams of crack cocaine. The

State did not present evidence of Appellant's conviction in cause no. 17763B or evidence that related to the offense committed by Appellant in that cause.

Considering the nature of Appellant's offense in this cause and considering the evidence that Appellant committed two additional serious offenses, we conclude that Appellant's twenty-five year sentence is not grossly disproportionate to the offense. Because we have concluded that the sentence is not grossly disproportionate to the offense, we do not compare Appellant's sentence to sentences imposed for similar crimes in Texas and sentences imposed for the same crime in other jurisdictions. *McGruder*, 954 F.2d at 316; *Dale*, 170 S.W.3d at 800.

A trial court has the discretion to order that a sentence run consecutively to a sentence imposed in a prior conviction. TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West 2012). Accordingly, the trial court did not err by ordering Appellant's sentence in this cause to run consecutively to his sentence in cause no. 17763B.

Appellant's sentence does not constitute cruel and unusual punishment. Appellant's fourth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


April 18, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

7